Case number 21-1336, Rich McCarty Dorce v. Merrick B. Garland, Attorney McLeod Ball. Please introduce yourself on the record to begin. Morning. It pleases the Court. I'm Kristen McLeod Ball on behalf of Petitioner Rich McCarty Dorce. With the Court's permission, I'd like to request two minutes for rebuttal. You may have it. Thank you. So, Petitioner Rich McCarty Dorce is a young man with two U.S. citizen children who lived in the United States his whole life. He was ordered removed to Haiti when he was pro se and detained, and this happened despite not receiving written notice of his hearing. The record includes evidence that Mr. Dorce did not receive this written notice of his hearing. Instead, he only learned of his hearing just three days before it occurred, and only because he himself… Please, that is your contention, but it was rejected by the BIA, which found that your client had not in fact… The immigration judge and the BIA both found that your client had not in fact shown that there was no notice of the hearing, that he'd had a conference with the immigration judge two weeks before. It was highly unlikely that there was no mention of the hearing. You get to the hearing, and he does not object at any point that he had no notice of the hearing or that he was unable to call his witnesses. So, if there is evidence in the record to support those determinations, doesn't that aspect of your case go away? Well, Your Honor, Petitioner argues that there is evidence that the BIA did not consider reflecting that he did not receive notice. The evidence that the BIA appeared to consider was Mr. Dorce's own declaration. But in addition, there were declarations from several members of his family outlining actions that Mr. Dorce and those family members took that are not logical had he actually received notice. What's the significance of the BIA's finding that the petitioner did not object that he had not received notice to the IJ when the IJ was questioning him about why the witnesses weren't there? Certainly. So, during the IJ hearing, Mr. Dorce mentioned that he intended to have witnesses and that those witnesses weren't present. He did not raise that he didn't receive notice, but he was not asked about notice. And Mr. Dorce was appearing pro se and was unlikely to know that there was a basis for sort of a change in circumstances based on lack of notice. In the past, when that same IJ had wanted to know whether he had received documents, his notice to appear, she expressly asked him about that. But if the same IJ had actually held, as it appears to be undisputed, a pre-hearing conference, at which point, as the BIA surmised, inevitably the issue of when his hearing would come up, why would the IJ ask such questions? So, Mr. Dorce, in his declaration, explained that the IJ, or the immigration court, contacted him by video and said his hearing would be changed, but said that the date would be provided by written notice. The BIA appears not to believe that that occurred. Five minutes remaining. Five minutes. It is a bit illogical. Judge Lynch has made an important point, I think, about the credibility determination by the BIA in the sense that there is this, what seems like an unusual event, an unrecorded, undocumented conversation. Between the IJ and your client. And what particularly troubles the BIA is that it seems undisputed that there was a written notice sent to him, dated November 27th, that advised him that the hearing would be on December 19th. When that alleged conversation takes place, between your client and the IJ, the IJ seems unaware of the fact, according to your client, that any such notice had been sent out. And I gather, from what the BIA says, that just seems implausible to them, that the IJ would be unaware of the fact that that notice had been sent out, setting the date of the hearing for December 19th. So, basically, the BIA just doesn't believe that account of this undocumented, off-the-record exchange. And that seems to, from the BIA's perspective, blow a hole in the contention that your client did not have any notice of the rescheduled hearing date on the 19th. How do you deal with that? I'd like to respond to that in three ways, if you don't mind. The first is that, regardless of whether the BIA or this court believes that Mr. Dorsey correctly recalled that off-the-record hearing that allegedly took place, regardless of that, the record still reflects that he did not receive written notice, as is required by the statute and the due process clause, as he argues, of that hearing. I'm sorry. That's his assertion. Why does the record compel any such conclusion? There's additional evidence beyond his assertion in the record, in the form of the declarations of his sister, his father, and his uncle, which the board did not take any objection to, and so appears not to have considered. We believe that the board needed to consider those declarations that reflect the actions taken by Mr. Dorsey and other folks reported contemporaneously to his family member. This takes me back to the potential waiver problem, which is, I take the point that you say that the IJ didn't say, you know, did you get notice? But the IJ did ask, where are your witnesses? Why aren't they here? And his answer is, I don't know, which is an odd answer if the answer is, well, I didn't have notice, so why would they be here? Sure, so the declaration of Mr. Dorsey and of his sister reflect that he called the EOIR 1-800 number several days in advance of this hearing. I'm not asking about that point. I'm asking about the difficulty on this record, given we're reviewing the BIA. And the BIA has said, well, this whole set of arguments about that would explain why the witnesses weren't there was not made to the IJ when the IJ asked the petitioner, where are the witnesses? Why aren't they here? And his answer was, I don't know why they didn't show up. So he was given an opportunity to explain why the witnesses weren't there. If he wanted to explain that it had something to do with the failure of notice, which is, I take it, what you'd like us to conclude. I don't see why he wasn't given that opportunity at the time of the hearing. Yes, Your Honor, we would argue that what he said at the hearing is not inconsistent with his declaration because he contacted... I'm not saying it isn't. Oh, I'm sorry. I'm not saying he's not credible, what he's now saying. I'm saying, doesn't the record show and didn't the BIA find he had an opportunity to make this argument to the IJ and didn't because the IJ asked him, where are your witnesses? So two points on that, Your Honor. When the BIA found that there hadn't been a procedural error, it did not do so based on the failure to exhaust. That was sort of considered in terms of what it was looking at. But the BIA addressed whether or not this notice occurred. And so I believe that this court is able to do so as well. So you're arguing that if I read the BIA's decision, it actually did not rely on a waiver of this argument. Right. It did it purely on the merits. Therefore, we have to do it on the merits. Yes, Your Honor. And furthermore. Sorry. That's helpful. OK. And additionally, the argument is. Apologies, I got a little confused. The part that I wanted to bring back is that Mr. Dorsey at that time was was pro se. And so his sort of statements and pleadings, the fact that he presented the judge with the hearing notice that he thought was applicable, then should be construed broadly to the extent that this court is looking at exhaustion. But I don't believe that it's necessary based on what the BIA found in its decision. Putting aside issues of waiver and exhaustion, just in terms of the credibility judgment that the BIA had to make, the fact that your client, when given an opportunity, as Judge Barron has indicated, to explain why these witnesses were here, doesn't say a word about the notice problem. And the issue was raised for the first time in this petition to the BIA with the benefit of counsel. I understand that. I mean, doesn't that failure to raise that notice issue play into the credibility determination that the BIA made? Well, Your Honor, and I think this is what I was incorrectly trying to talk about earlier, is that we actually don't believe that that's inconsistent. Because Mr. Dorsey, upon learning of the date of the hearing, contacted his sister, who was doing the organizing of getting witnesses to the hearing. We're now going in circles. You've made that point before. This would be helpful to me to hear this point. I don't think I could totally follow that. You could finish it. Okay. Sorry. So, in his understanding, his sister was reaching out to these witnesses to see if they could somehow get there within three days. And so, when he said, I believe that they're going to be here, you know, his sister had reached out to them. That was accurate in his understanding, not knowing that lack of notice was a basis to sort of argue that the hearing shouldn't be continued, because he was pro se and sort of unaware of his rights in this hearing. Okay. Anything else? I guess I'm not totally following the point. The idea is that somehow the lack of notice led to them not showing. Is that the idea? Yes. Yes, Your Honor. I guess I don't understand this. Why wouldn't that have been a very natural thing to point out as the reason for them not showing? It doesn't require knowledge about whether notice and a failure to give notice is an error. It's just, why aren't they here? One answer would be, well, I didn't have notice. That's why they didn't show. They didn't have enough time to get here. But there's no indication of that. It seems more, just reading the record, that he fully expected them to be there, as if he had plenty of notice to get them there, and then he doesn't know why they're not showing. That's the problem, the credibility issue. So I would argue that, you know, someone who might be sort of fearful of being in the court would be hesitant to sort of give a reason that they didn't really know. If they didn't know why the person wasn't there, right, they didn't know how the person responded to his sister's phone call. They would just say, I don't know. But more than that, I would argue that sort of his actions and his family's actions beforehand would be illogical if he had received notice, right? If his sister sort of contemporaneously said, Mr. Dorsey called me three days before and said, I just now learned of the hearing date. And so, you know, the BIA didn't appear to consider that evidence. Apologies. Thank you. Thank you. Thank you. We'll hear from the government. Thank you, Attorney McCloud-Ball. At this time, if you could mute your audio and video, and if Attorney Anderson could please introduce himself to begin the argument. Good morning, Your Honor. Eric Anderson representing the Attorney General. In September 2019, Mr. Dorsey personally served notice that his hearing would occur on December 4th, the hearing on his application for cancellation of removal. In between these events, the hearing was postponed by about two weeks to December 19th. And we know two things that are absolutely certain. Excuse me, counsel. You start. Excuse me for interrupting, but I think this may get to an important point. From the government's point of view, I think you started in the wrong place because you refer to that September 30th notice, which indicates that there will be, his merits hearing will be on December 4th. We, based on this record, we do not know why that did not happen on December 4th. I mean, clearly, he anticipated that it would. He made arrangements for family members to be there. Apparently, for some reason, he was never brought there on December 4th. There was some kind of a glitch, which I think is still unexplained, which suggests that there were problems with the notification process here and the follow-up to it. And then, having received this communication that there will be a hearing on December 4th, a notice goes out on November 27th, which says, apparently, the hearing will be on December 19th, not on December 4th. And there's no attempt to sort of reconcile those two conflicting notices. The one that said December 4th, it never happens. The next one comes out on November 27th and says, no, no, it'll be December 19th. I mean, that, at the very least, suggests that there were problems with the communications with the petitioner as to when his hearing would take place. And the BIA doesn't reflect any of that history in its analysis. Why isn't that a problem from the government's point of view? I'm afraid, Your Honor, I don't see why it shows there was a problem communicating with Mr. Dorsey. I mean, we know the September 30th notice was personally served to him, handed to him, so we know that. Right. Before that hearing could occur, the date had to be changed. And I admit, the record does not reveal why it had to be changed. Mr. Dorsey attributes a statement to the immigration judge that, oh, there was a last-minute snafu on the 4th. Well, that's implausible because nothing happened on the 4th. As of November 27th, it was already on the 4th. He had his witnesses show up on the 4th, right? Well, two of his three witnesses, we accept, showed up at the hearing on the 4th. The mother of his children provided no reason why she didn't show up that day. But I admit there was some time, and it would have been through Mr. Dorsey, I have no doubt, he conveyed to his witnesses, please come on the 4th. Whether he failed to advise them of the change, you know, there's a lot of things I wouldn't know about. But in terms of just the fact that a hearing had to be rescheduled, I don't think that shows a problem at all. As for himself personally, it wasn't a problem because, A, he showed up. It wasn't entirely up to him. He was detained. So, yes, he was present on the 19th. And, again, for himself personally, he was prepared two weeks earlier. He was still prepared on the 19th. His applications were in, his documents were in, and he was ready to testify. So this all comes up because the immigration judge held the hearing and denied cancellation in an exercise of discretion. And then we have this claim of procedural error that I did not receive notice of the December 19th hearing until immediately before. And the board rejects this on finding that he failed to show an error of fundamental fairness and failed to show prejudice. So to start with the claim of error, again, I think we're all agreed the chronology starts with the mailing. Before you get into the merits of that, are you confirming that you agree with the petitioner that the BIA did not rely on a failure to exhaust? You're right. I agree. I think it goes to an issue of the implausibility of his claim and not to a formal but not a failure to raise an argument as a legal obstacle. It was just this is an argument. This is something this is an observation someone would have made when asked at the immigration hearing. Where are your witnesses? Why are they not here? Just the answer. I don't know when you're prompted to. Well, there was this scheduling error. I didn't know about it. They couldn't come. None of that is raised. But that just goes to the plausibility of this claim. I agree with the sort of the header that goes on the labeling of these facts. Is it a problem that the BIA in evaluating the plausibility didn't assess the declarations from the other participants? I don't know why they didn't show. I don't agree that they didn't assess. I mean, all of these communications would have been through Mr. Dorsey. None of the other witnesses would have had firsthand knowledge of what occurred. So we start with the November 27th notice. And I think we can all agree the great majority of mail reaches its recipients. Sometimes it doesn't. The problem with Mr. Dorsey's case is that the entire story he tells about non-receipt and late notice of the December 19th hearing, it just becomes more and more implausible. To start with, it's implausible that this off-the-record conversation with an immigration judge occurred at all. A detained non-citizen does not initiate video calls with immigration judges. They're sort of the recipients, if you were. In a detained setting, they are brought to the videoconference facility. And they are only brought there when there's a reason to bring them there, i.e., when they have a hearing. Mr. Dorsey's brief paragraph in his declaration does not provide any of the facts that would explain how this highly unusual and, well, I would say unheard of event occurred. He just says it happened. And there's no fact, I mean, was DHS there? It's all very strange. But we start with that. And then we go on to other implausibilities. So what did the immigration judge allegedly tell you in this alleged hearing? Well, she said the December 4th hearing was canceled at the last minute because of they failed to bring me to the in-person immigration court. Well, that's not true, because on November 27th, the December 4th hearing was already off. So it wasn't a last-minute thing on the 4th. And, again, what did the immigration judge tell you? She said she did not know the date of my new hearing. Well, the immigration court records said on November 27th that the hearing was going to occur on December 19th. It's implausible that she wouldn't know this. And add to all this the implausibility of Mr. Dorsey then showing up on the 19th and being asked, where are your witnesses? Why aren't they here? Do you know? And his answer is, I don't know. All of these things make his account of lack of receipt and learning only late of the new hearing date implausible. But just help me with the declaration from the other family member. What do they say about why they didn't show? Don't they say that they weren't told by him that there was going to be a hearing until it was last minute? Or is that wrong? At least some of them do, Your Honor. I mean, they don't all address all the points. But I think the uncle clearly says, I learned of the December 19th hearing late. Well, how he learned of the hearing, that's a whole second round of accounts and variations. I see. So you're saying none of them testified that the petitioner told them, I just got notice, I need you to be there. At most, they're just testifying when they were told to show up. They would have communicated with the sister. And, again, there is a declaration from the sister. I can get myself there quickly if you'd like. I mean, it only matters to me. The reason it matters to me, if it matters, is that I take it you're not disputing the BIA did not engage with it. Are you thinking the BIA did engage with that evidence? I think they considered all the evidence, Your Honor. And what's the indication that the BIA considered that evidence and just found it didn't factor into the credibility determination enough to show that the petitioner is believable? I mean, that all of the at most. At most, there would be one statement of a sister reporting an implausible claim. I mean, the sister did not make it any clearer how an off the record conversation with the immigration judge occurred. No, I was just asking a simple question. Did the BIA assess that statement, that declaration, and conclude it doesn't change our mind? Or did the BIA just not address it? I mean, counsel, there's no indication in the written decision that they assessed those declarations. I don't see any indication of that. But I think you're seems to me you're making an assumption that they addressed it because they don't say so. I mean, we know. I mean, certainly on the prejudice aspect. I mean, we know the board did not fail to see these declarations. Right. We know the board, in fact, the standard isn't whether it was submitted. The standard is whether it was considered. Well, we know they were there and we know the board read them because it cited them and discussed them in the prejudice explicitly. Right. And the board wouldn't have forgotten them in the first half of the decision and then cited and discussed and considered them in the second. OK, so your conclusion is that the credibility finding is implicitly based on a review of those declarations as well. The the that the declarations do not do anything to shift the needle and shift the needle on the implausibility of his claims. That wasn't how I put it. Are you arguing to us that we should understand the BIA to have impliedly based its finding on a review of those declarations? It's. It's not implied, Your Honor, because they cite and discuss the declarations in the decision. So if they discuss it on prejudice, it's illogical to think that they did not consider it on credibility. I think so, Your Honor. Counsel, what permits you. You said at one point that given that there is in the record this November 27th notice indicating the new hearing date will be December 19th. It therefore follows that he got the notice. What what permits you to say that? I mean, at most, there may be a presumption that he would have received it. But we do know from the history of these proceedings that there were there were significant delays in the past. There was evidence back in July, I believe, of 2019 that information about the future proceedings was sent to him. And he didn't he didn't get it for like 10 days after it was after it was mailed to the facility. So what what permits you to say so confidently that we know that he got this November 27th notice? Well, Your Honor, I started by saying we all know some mail gets there and some mail doesn't. But what was Mr. Dorsey's account? It was not a simple claim of I didn't get it. He ties all that up in an account that is implausible on its face. And when when a piece of mail is returned to the board, one would expect and one often sees. That's time. Finish your thought, please. The board would keep a receipt of a returned piece of mail that failed to reach its recipient. And we'd ask for the petition for review to be denied unless there are any further questions. OK, thank you. Thank you, Mr. Anderson. At this time, if you could mute your audio and video, I believe that there's a two minute rebuttal for Attorney McLeod Ball. Yes, sir. Yes, Judge. She can begin by reintroducing herself on the record. Kristen McLeod Ball for Petitioner Rich Cardy Dorsey, Your Honors. So the decision does not reflect that in the analysis of the procedural due process errors that the board considered the declarations of Mr. Dorsey's family members. Indeed, nowhere in the decision does it reflect that. I'm sorry. They do discuss it on the prejudice point. Why would they have ignored it earlier? And how can we possibly draw the conclusion that the record compels a finding that they did not consider it on the issue of credibility of his assertions as to notice? Two points on that, Your Honor. Thank you. The first is that his sister's declaration, which contains much of the relevant information, actually is not addressed in the prejudice section either. And the second point is that the fact that the board conducted those two analyses separately. And so I don't think that there can be an inference based on consideration of prejudice that. Go ahead. Go ahead. Your task is to show that the record compels the conclusion that you want. What would compel us to read it the way you want? I think that the record compels the conclusion that they did not consider this evidence because they did not address the facts that are included in it. All right. Fine. Thank you, Judge Barron. Just two points. One, you're saying that at no point in the opinion do they reference the sister's declaration at all. Is that right? Yes, Your Honor. Because of the prejudice. Yeah. And then on the second point, in the prejudice analysis, I take it your point is that the reason for concluding that there's no prejudice shown, notwithstanding the declarations, are reasons that don't relate to aspects of the declaration that would bear on the notice question. Is that right? Yes, Your Honor. Could you just help me see how that could be so? In other words, when they rely on the declarations in describing why there's no prejudice from whatever error was claimed, how could that analysis not impliedly engage with the question of whether proper notice had been given? Well, Your Honor, the prejudice analysis concerned the topics that they were planning to discuss had they testified, whereas the procedural error sort of consists of where they went on what day and when they received particular information. It's separate parts of the declaration. The last thought is, am I right that even if we were to agree with you on the notice point, you still need to overcome the BIA's prejudice finding? On the due process argument, we argue that the board didn't actually consider the statutory and regulatory claims at all, and so it would be appropriate to remand for consideration of those in the first instance altogether. But, Counsel, the government says that the so-called operative facts don't change, so why would that matter that they don't explicitly discuss the statutory and regulatory claim? It seems to me the government makes a good point that the way in which you would analyze those claims don't differ in any way from the way you would analyze prejudice with respect to due process. Why does that matter? Well, two points, Your Honor. The first is that we argue that for sort of statutory and regulatory rights based on fundamental constitutional rights, there should not be a prejudice requirement, full stop. But furthermore, even if there was, we argue that simply having the same facts underlying a particular legal claim does not discount the need to do a separate legal analysis. Like in cases that have sort of recently been presented to this court where you look at an equitable tolling claim versus a sort of self-certification of late appeal claim, the same facts underlie them, but you conduct the analysis separately because they have… The finding of no prejudice here, I understand that technically you need a separate finding. What would indicate that the prejudice ruling would come out differently when looked at through the lens of procedural due process? Assuming there's no error in the prejudice analysis on the merits, you're making a technical point that there's no prejudice analysis done on the procedural due process. Judge Lopez's question is, what would possibly indicate it could come out differently? Oh, so quick pause to say, first, that the prejudice requirement doesn't apply at all. Second, we do believe there are errors in the prejudice analysis, but that the sort of statutory analysis would draw upon different case laws, such as perhaps the court's law around statutory violations in absentia statute that would lead to sort of different factors being considered. And so, it would be appropriate for the analysis to be done differently under a different standard. Okay. Are there any further questions? No. Thank you, counsel. Thank you very much. That concludes argument in this case. Attorney McLeod Ball and Attorney Anderson, you should disconnect from the hearing at this time.